Your Honor, the police, the court, my name is Lamar G. Howell, representing the plaintiff-appellant Corey Thomas. I would like to reserve three minutes for rebuttal. I do so. This is a case of liberty versus order. Hilltop, a community in Tacoma, was notorious for drug activity, and the police had their hands full. On the other hand, there were law-abiding citizens, mostly black, like Mr. Ali, who resented the way ordinary citizens were treated by the Tacoma police and complained to the mayor, the city manager, the chief of police, the city council, etc. Consequently, the police regarded Mr. Ali and his family, including Corey Thomas, as troublemakers. That set the stage for innumerable stops without cause, false traffic infraction citations, and even a false charge of assaulting a police officer. There was a series of events that involved the Ali family who live on Hilltop and the Tacoma Police Department. There is no allegation that any of the Ali family members were involved in drugs or felons. Judge Bryan, in bifurcating the trial, was going to let the issue of negligent retention by the city of Officer Baker go to the jury. Of course, plaintiffs were prevented from showing the evidence of negligent retention, i.e. Baker's bad history because of the bifurcation of the trial, or should we say trifurcation, so that evidence was not allowed in the first phase of the trial. Mr. Howell, getting to the heart of the matter, your client prevailed on one claim. Yes, sir. About $35,000, including 20,000 punitives. Is that correct? Do I have that correct? You have it absolutely correct, Judge. But prevailed on no other claim? No other claims. All right. And there were a number of defendants, including Corey Thomas, like Mr. Ali and his son. So your position, of course, is that you're entitled to attorney's fees at least with respect to the one claim. You hit the nail right on the head. And explain why. Okay. Let me give you a little background about what we were faced with. This was Exhibit 1 from the trial. That's Sergeant Peck, who held a gun to his head. That's Mr. Ali, law-abiding citizen. And it was just fortuitous that somebody went and got a camera because of the melee that was going on there. And we say, well, gosh, with evidence like that, there was no other. No, because this was right after 9-11. And police officers and firemen saved a lot of people's lives. And, you know, it's difficult to argue about that. I don't want to make an excuse. I was looking for reasons why there were not more favorable results, because I compare it to a case that was down in this circuit, this Ninth Circuit, this Wilcox case here, where Wilcox was drunk, verbally abusive, and uncooperative. Moreover, the jury was informed that Wilcox, just prior to his arrest, had broken a glass or a beer bottle on a woman's face and had also been convicted of several penalties and was incarcerated at the time of trial. I'd never taken a case. But this Court gave he got $1, $1 in spite of Farrar. He got $1, and the Court said he was entitled to attorneys' fees. All right. What would the measure of attorneys' fees be with respect to the one claim that you prevailed on? I think it depends on its relatedness to the other claims, Your Honor. For example, the one particular defendant, Tennyson, was involved in three of the eight claims that Corey Thomas brought. And I'm suggesting to the Court that if you had just come in with that one claim, with nothing else, then, you know, they saw that in this picture, the guy with the ass over here is Tennyson. He's the one. And he didn't have his name on there. He had Jakabinsky's name on his uniform.  All of that, counsel, would be an argument about the scope of the attorneys' fees. If you're entitled to them at all, all of that goes to the district court about whether the other claims on which you didn't prevail were sufficiently entangled with the one on which you prevailed that some of that labor to prepare those causes is a part of the act. You are absolutely right, Judge. But that's for the trial court. The question is, are you entitled to any attorney's fees at all before us? Exactly. You use the right term, entitlement. Yes, Thomas' entitlement, entitled as a prevailing. The defendants are not entitled. All right? And you ask that question. There's a case from your jurisdiction that says that right on point. Hamilton about some statutes that were hampering homosexuals from demonstrating. And the court said, the prevailing party inquiry does not turn on the magnitude of the relief obtained and the degree of plaintiffs does not affect the eligibility for a fee award. And, Your Honor, I want to call your attention to this great case from the First Circuit Tang. All right? In that case, this poor woman failed and they found that it was frivolous. But the court there said, in using entitled, we did not intend to require the district court to grant fee requests once frivolity has been established. Rather, we intended to state that the finding of frivolity still remains the discretion to deny or reduce fee requests after considering all the nuances of a particular case. Your Honor, in our reply brief on page 3, we set out all the findings of the court. The plaintiff's victory on one claim here cannot be described as nominal. The jury did award compensatory and punitive damages. The plaintiff is the chosen instrument of Congress to validate a policy that Congress considers of the highest priorities. But clearly one of the policy factors Congress had in mind, it seems to me, is the therapeutic nature of these kinds of cases that allow people to test their belief that their rights have been infringed upon by the people in authority, and that's clearly what has been exercised here. One of the things that has been exercised here is these plaintiffs' sincere, I believe, belief that they were mistreated. He goes on. Counsel, you're down to less than three minutes. You indicated you might want to reserve. I just want to say that, you know, the code words, frivolous, unreasonable, or without foundation, the court found that that was not true of the plaintiff's claim. And just bear in mind that there were a multitude of instances, some documented with photographs, videotapes, and so forth. All right. Thank you, Mr. Howell. You will reserve. You have reserved time after we hear from Ms. Holman. Is that right? Yes. May it please the Court? I'm Jean Holman. I represent the City of Tacoma and the individually named defendants in this matter. There are two separate yet distinctly interrelated issues pending before the Court. Whether the district court abused its discretion in denying the plaintiff's fee request, given that the plaintiff prevailed on one out of approximately 269 claims, and whether the district court abused its discretion in denying all fees to the defendants, who prevailed on 268 out of those 269 claims. In the appellant's briefing, they focus on Farrar. The district court did not rely upon the express holding in Farrar in deciding that in this case, special circumstances exist which would render an award of fees to the plaintiff manifestly unjust. That wasn't a new rule of law that was first announced by the Supreme Court in 1968 in Newman v. Piggy Park. It was affirmed by the Court in Hensley v. Eckerhart, where the Court discussed limited success by the party, and most instructively was discussed at length in Justice O'Connor's concurring opinion in Farrar. As Justice O'Connor pointed out, the exception, the manifest unjust exception to the prevailing plaintiff fee award is not a second hurdle to deciding whether they're a prevailing plaintiff. In this case, Corey Thomas is a prevailing plaintiff on one claim. That is unquestionable. What the Court had to decide, though, is whether he was entitled to an award of fees given the true magnitude and scope of this litigation. And the Court concluded he was not. Section 1988 is the case. But what's the test for our review of that particular decision? The test is whether or not the fees further the purposes of Section 1988 and whether the balance of equities favors or disfavors a fee award. As the Court discussed in Christiansburg and as Justice O'Connor discussed in her concurring opinion in Farrar, Congress did not intend to foster frivolous or unfounded claims. The point of the civil rights litigation is to ---- But, counsel, in this case, plaintiff, at least in that one out of 269 claims, did in fact get damages of $35,000. Yes, he did. And punitive. And punitive damages. Certainly there's got to be a manifestation that went to the core of what this statute was designed to remedy. Yes, but in so doing, the plaintiff adopted the shotgun pleading approach that was expressly disapproved by this Court in quarter. Are you blaming Thomas for what the weakness of the cases of the co-plaintiffs? What moral responsibility does Thomas have because he gets an attorney who takes some cases which aren't such good cases and puts them all together for trial? Why is Thomas to be tarbrushed with the inadequacies of his co-plaintiffs' cases? Well, there was no published precedent in the Ninth Circuit on this case, but I think the Second Circuit's opinion aptly described that the fact that the attorney or the plaintiffs in good faith relied upon their advice of counsel doesn't remove it from the standard articulated by the Court in Christiansburg. Mr. Thomas didn't assert just one claim in this case. Mr. Thomas asserted dozens and dozens and dozens of claims in this case. Of the 269 claims that were pursued, the majority of them were his. So the question, if you chunk out the other three plaintiffs, take out the claims asserted by Mr. Ali, Mr. Rockman, and Mr. Alexander, you are left with Mr. Thomas prevailing on one out of dozens and dozens of claims. And I'm going to be brief. What were the type of claims upon which Thomas did not prevail? There were claims that ran the gamut, Your Honor. He asserted, for example, there were 15 separate incidents wherein the plaintiff asserted claims of false arrest or malicious prosecution under Section 1983 for a violation of the Fourth Amendment rights. And for each of those incidents, the plaintiff had been convicted of the crime for which they were arrested. The conviction, because it had not been invalidated in some way, absolutely barred under Heffey-Humphreys the pursuit of those Federal civil rights claims. Mr. Thomas, I believe, had 10 out of those 15 incidents. So right there, you have 20 claims that Mr. Thomas asserted which were barred as a matter of law before he ever filed the lawsuit. Well, that would be evidence on your behalf as to whether you're entitled to fees because of the frivolous nature of his claims. But putting that to one side, is it your idea that if he's got 50 claims and he brings 50 claims but prevails only on one, we ought to consider the nature of the 49 claims that have been turned down in deciding whether the one was frivolous? Yes. The Court has said, the Supreme Court has said, and looking at the plain language of Section 1988, the district court is not required to award fees. The court may, in its discretion, award fees. And the Court has repeatedly said, ordinarily, a prevailing plaintiff should be entitled to fees, except when special circumstances exist which would render an award manifestly unjust. This is one of those special circumstances. You do look at the other 49 claims to decide whether the prevailing claim entitles or justifies an award or whether it would be so unreasonable as to be manifestly unjust. It's difficult to look at the plaintiff's denial of fee request without also considering the defendant's fee request. The two are inextricably intertwined. The district court ---- The presumptions are different. Absolutely. And the standard is very different. The presumption is against award to defendants and it favors the award to plaintiffs. Absolutely. And the special circumstances which overcome the presumption awarding the plaintiff fees also militates in favor of awarding the defendants their fees. In this case, the plaintiffs prevailed on one claim based on one incident against one officer out of 269 claims. Yes, but those all weren't Thomas's claims. How many claims did Thomas have by himself? I apologize to the Court. I could not put a specific number on it. I can tell you that over 50 percent of those claims were Mr. Thomas's. I did not sit down and break it out in that manner. And how many of those Thomas claims actually went to trial? The pretrial order is found in the record in this matter. And I believe that Mr. Thomas asserted claims in seven of the eight incidents that ultimately went to trial. So, again, more than 50 percent of the claims pursued at trial were pursued by Mr. Thomas. They got passed a motion to dismiss. They went to the trial. They went to trial. They did. And the defendants are ---- So obviously not frivolous. The defendants concede the claims that went to trial are the ones least likely to support an award of attorney's fees in this matter. It's the defendants' contention that the Court did abuse its discretion, however, in not awarding fees with respect to claims that were dismissed in the dispositive motion phase of this litigation, particularly claims brought by Mr. Ali, Mr. Alexander, and Mr. Rockman. They cannot be characterized as prevailing parties in this matter. They didn't prevail on a single claim. There are categories of claims outlined in the defendants' briefing which unquestionably called for an award of fees. There were four defendants who were dismissed on 12b motions because there were literally no facts alleged which would support any causes of action against them. The plaintiff opposed that motion to dismiss. Let me get this straight. You're saying that after pretrial, after motions to dismiss, after summary judgment motions, there were seven of eight claims that went to trial were Thomas's? There were eight incidents that were the subject of trial, Your Honor. Thomas's, not Ali and everybody else. The plaintiffs mixed it up quite a bit. Mr. Thomas asserted claims based on seven of the eight incidents. Some of the other plaintiffs also asserted claims for the same incidents. For example, the May 9th. Mr. Thomas had seven claims that survived to go to trial. Of those seven, he lost on six, and he won on one. Is that correct? May I clarify? No, there weren't seven claims. There were 34 claims that went to trial. There were eight separate incidents which gave rise to those claims. So Mr. Thomas, out of the claims that went to the jury, one was dismissed on a directed verdict after the plaintiffs closed evidence on a particular incident. So 33 claims went to the jury. 32, the jury found for the defendants. The jury found for Mr. Thomas on one. And the specific number of claims that Mr. Thomas asserted at trial can be found in the pretrial order. There is a chart which specifically delineates by incident and by party what claims are being asserted. With respect to the denial of the defendant's free request, there were distinct categories of claims which were absolutely untenable. I've already talked about claims which were barred by Heck v. Humphreys. Parties against whom no claims were asserted. Claims asserted against non-parties. In her concurring opinion in Farrar, Justice O'Connor summed up the plaintiff's case by saying, Joseph Farrar may have won a point, but the game, set, and match went to the defendants in this matter. She could have as easily been talking about this case. The Court abused its discretion in not awarding fees to the defendant. Thank you. Counsel, your time has expired. Mr. Howell, you have a little time left. And, Your Honor, quickly, the Court did find that none of the claims rose to frivolous, unreasonable, or without foundation. That's on page 4 of our reply brief. But the defendant is singing a different tune. And when the motion was argued, the point was, well, yes, Your Honor, but the fee should be low. Now they're saying that there shouldn't be any fee. So that's a change. But the thing that I wanted to do, what really antagonized the defendants was because Judge Bryant gave us a full-blown hearing on the unconstitutionality of the thing on a motion for reconsideration because it had been decided adverse to plaintiff. And so in their brief at page 18, they say, Moreover, the policy of protecting defendants from burdensome litigation wasn't as important to Congress as its goal to encouraging plaintiffs to seek enforcement of their rights. What's wrong with that? She admitted having no legal or factual basis. They resented having to work on this. Finally, there is a case from this district, Mack v. Wessler, where Your Honor is assigned where the court said, We have never found the district court's refusal to award attorney's fees to a prevailing civil rights defendant to be an abuse of discretion given the Supreme Court's admonition that attorney's fees may be awarded to civil rights defendants only in exceptional circumstances. Finally, Your Honor, I would say that it's necessary that the decision and all the It's necessary that it be uniform. Thank you very much. Thank you, counsel. The case just argued will be submitted for decision.
judges: McKay , O'scannlain, Bea